# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### KNOXVILLE DIVISION

|  |  |
|---|---|
| ANITA AUCHARD, Individually and as | ) |
| Next Friend of B. A., a minor, | ) |
| KRISTI BAKER, Individually and as | ) |
| Next Friend of D.S. and K.S., minors, | ) |
| SYBIL BALL, | ) |
| ELAINE BARNES, | ) |
| JIM BARNES, | ) |
| RICK A. BARRETT, | ) |
| BRIAN T. BEATY, | ) |
| TRACY A. BEATY, | ) |
| ELIZABETH A. BRADFORD, | ) |
| AMY BRANDON, | ) |
| DIANE J. BREINER, | ) |
| FRED J. BREINER, | ) |
| LANCE W. BRIMBLE, | ) |
| JEFFREY BRYANT, | ) |
| ALEXIS BRYSON, | ) |
| CORTNEY BRYSON, | ) |
| JAMES M. BURNETTE, | ) |
| SANDRA P. BURNETTE, | ) |
| AUDY L. BYRD, | ) |
| DEBRA L. BYRD, | )     Case No._____ |
| CHARLES CATES, | ) |
| JOYCE CATES, | ) |
| BUFFY K. CLARK, Individually and | )     JURY DEMAND |
| as Next Friend of S.B.O., a minor, | ) |
| GISELA CONDON, | ) |
| JAMES B. CONDON, | ) |
| JASON CONWAY, | ) |
| REBECCA CONWAY, Individually and | ) |
| as Next Friend of A.C. and E.C., minors, | ) |
| JACQUI L. DOUGHTY, | ) |
| PAT DOUGHTY, | ) |
| SCOTT L. DOUGHTY, Individually and | ) |
| as Next Friend of C.S.D., a minor, | ) |
| LEA DUNCAN, | ) |
| LUKE DUNCAN, | ) |
| RON DUNCAN, | ) |
| SAMARA DUNCAN, | ) |
| DORIS S. EDWARDS, | ) |

NANCY ENGMAN,                                    )
PAUL ENGMAN,                                     )
BOB GAJEWSKI,                                    )
JANET GAJEWSKI,                                  )
ELISA GASTINEAU,                                 )
MICHAEL GASTINEAU,                               )
DAVID GRUNWELL,                                  )
KATHY GRUNWELL,                                  )
FRED GUINN, Individually and as Next  )
Friend of K.G. and K.G., minors,                 )
STEVEN L. HAY,                                   )
SUSAN R. HAY,                                    )
DOLLIE HENDRICKSON,                              )
TAMI HINES-WILLIAMS, Individually  )
and as Next Friend of T.H. a minor,              )
GREG HOSKINS,                                    )
KELLY HOSKINS,                                   )
SUSAN HUTCHINSON,                                )
TWILIGHT LOY,                                    )
CHRISTOPHER LUFFMAN                              )
Individually and as Next Friend of               )
C.L. and Z.L., minors,                           )
ALICE MCDOWELL,                                  )
ANGELA L. MELTON,                                )
JACKIE B. MELTON,                                )
MARILYN MITCHELL,                                )
THOMAS MITCHELL JR. Individually  )
and as Next Friend of B.M-B., a minor,           )
ERIK M. PEREZ,                                   )
TONY F. PEREZ,                                   )
CHARLES L. PHILLIPS,                             )
PAMELA J. PHILLIPS,                              )
BRUCE RENZO,                                     )
KAREN RENZO,                                     )
STEPHEN K. RENZO, Individually and  )
 as Next Friend of F.R. and H.R., minors,  )
JOHN V. RICCIO,                                  )
MICAH L. RUSINEK,                                )
STANLEY R. RUSINEK,                              )
MITCHEL RUTHERFORD,                              )
JUDY K. SMITH,                                   )
PAUL SMITH,                                      )
VICTORIA SMITH,                                  )

2

DENISE J. SORENSEN, )
WAYNE P. SORENSEN, )
CHRISTINE K. SOSNOWICZ, )
HARRY SOSNOWICZ, )
ALFRED D. STEIMEL, )
SYLVIA A. STEIMEL, )
DEBORAH S. STILES, )
ELIZABETH M. STONE, )
ERIC M. STONE, Individually and as )
Next Friend of B.G.S., E.J.S. and M.C.S., )
minors, )
PETER M. STRESEN-REUTER, )
GARY D. THOMAS, )
ROBERT TRIMMER, )
BRIAN WALKER, )
JAMES F. WEBB, )
TERINA WEBB, )
KEITH WICKS-PELFREY, )
PENNIE WICKS-PELFREY, )
DE'LANO WILLIAMS, )
DEBORAH A. ZECKSER, )
)
)
            Plaintiffs, )
)
)
)
vs. )
)
)
THE TENNESSEE VALLEY )
AUTHORITY, )
)
            Defendant. )
_____ )

## COMPLAINT

Plaintiffs, by and through counsel, for their causes of action against the Defendant

Tennessee Valley Authority (hereinafter "TVA"), state to the Court as follows:

3

## NATURE OF THE CASE

1.      Plaintiffs bring this action against Defendant TVA as a result of the catastrophic spill on December 22, 2008, of toxic coal ash sludge from containment structures at a Class II landfill at TVA's Kingston Fossil Plant, located at the confluence of the Emory and Clinch Rivers near the City of Kingston, Roane County, Tennessee.

2.      The TVA's Kingston Fossil Plant is a coal-fired power plant which produces electricity. Ash and other coal combustion products ("CCPs") are waste products of burning coal. The ash waste is processed, handled, stored, and controlled in various containment structures such as settling ponds, retention ponds, dredge cells, pools, drainage channels, and by other systems, equipment, and methods, by Defendant TVA at the Kingston Fossil Plant.

3.      The ash waste containment structure which failed was, in 1995, the subject of a settling pond closure plan submitted by Defendant TVA to the Tennessee Department of Environment and Conservation, Solid Waste Management Division ("SWM"). However, pursuant to discussions with SWM, Defendant TVA agreed that the closure of the settling pond constituted the operation of a Class II landfill and in June 1999 modified the settling pond closure application to an application for a Class II landfill for the disposal of ash waste. The SWM issued Defendant TVA the requested Class II landfill permit on September 26, 2000.

4.      Plaintiffs are property and home owners who reside and/or do business in the valley and adjacent lands in proximity to and in the vicinity of the Kingston Fossil Plant who have suffered damages as a result of the ash spill.

5.      The spill of ash sludge resulted from the breach of an earthen dike or retention wall enclosing a 98-acre containment structure containing ash waste. The spill released more

4

than 5.4 million cubic yards, equivalent to more than one billion gallons, of ash sludge into the Emory, Clinch, and Tennessee Rivers, which are waters of the State of Tennessee, and flooded a wide swath of the adjacent valley, covering more than 300 acres of land adjacent to the plant and onto the land of more than thirty-six residential properties, sweeping some of them off their foundations.

6.     Defendant TVA knew or should have known that the ash sludge which spilled contains toxic pollutants including arsenic, barium, cadmium, chromium, copper, lead, mercury, nickel, selenium, thallium, and other pollutants, including radioactive substances, which are extremely hazardous to human health. For example, arsenic and chromium are known to be human carcinogens. Lead and thallium are, among other things, extremely neurotoxic and can cause birth defects and reproductive system disorders.

7.     A 2007 inventory filed by TVA with the EPA shows that in just one year TVA deposited more than 2.2 million pounds of toxic materials in the containment structures of the Class II landfill which ultimately failed. The inventory also showed that in just one year the plant's byproducts included 45,000 pounds of arsenic, 49,000 pounds of lead, 1.4 million pounds of barium, 91,000 pounds of chromium, and 140,000 pounds of manganese. These metals are toxic to human health and can cause cancers, liver damage, neurological damage, and other health problems.

8.     Defendant TVA knew or should have known that there were problems with the containment structures of the Class II landfill which made it foreseeable and highly likely that they would fail and release massive quantities of the toxic waste into the environment and onto Plaintiffs' property.

5

9.     Testing by the EPA and other organizations after the spill shows levels of toxic metals in sediment and water samples to be above regulatory limits, including some arsenic levels which are 149 times the maximum allowable level.

10.     Plaintiffs seek damages and other relief for loss of the use and enjoyment of their homes, diminution in the value of their property, emotional distress, increased risk of future disease, fear of cancer, and medical monitoring.

11.     Plaintiffs assert causes of action in public and private nuisance, statutory public nuisance, trespass, ordinary and gross negligence, negligence *per se*, intentional and negligent infliction of emotional distress, increased risk of future harm, and strict liability for ultra-hazardous activity.

## JURISDICTION AND VENUE

12.     This Court has original jurisdiction over this action under both 28 U.S.C. §§ 1331 and 1337 as a civil action arising under an Act of Congress regulating commerce, namely the Tennessee Valley Authority Act of 1933 ("TVA Act"), *as amended*, 16 U.S.C. §§ 831 *et seq*.

13.     Defendant TVA is a wholly owned federal corporation which, under the TVA Act, 16 U.S.C. § 831c(b), may sue and be sued in its corporate name.

14.     Plaintiffs are owners and/or lessees of real property residing in proximity to and in the vicinity of TVA's Kingston Fossil Plant located in Kingston, Tennessee, in Roane County, State of Tennessee.

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because (a) Defendant TVA's principal place of business is located in Knoxville, Tennessee, and thus it resides in this judicial district, (b) the events or omissions giving rise to the claims in this action occurred in or

6

near Kingston, Tennessee which is in this judicial district, and (c) all the properties involved in this matter reside in this district.

## PARTIES

16.     Plaintiff Anita Auchard, is a resident of Roane County, Tennessee, residing and owning real property located at 906 New Hope Road, Rockwood, TN 37854. B.A., a minor, resides with Ms. Auchard.

17.     Plaintiff Kristi Baker, is a resident of Roane County, Tennessee, residing and owning real property located at 1028 Smith Mt Road, Rockwood, TN 37854 and Parcell 046-132 Bluff Road, Harriman, TN 37748. D.S. and K.S., minors, reside with Ms. Baker.

18.     Plaintiff Sybill Ball, is a resident of Roane County, Tennessee, residing at 130 Love Drive, Harriman, TN 37748.

19.     Plaintiff Elaine Barnes, is a resident of Roane County, Tennessee, residing and owning real property located at 346 Peninsula Road, Harriman, TN 37748.

20.     Plaintiff Jim Barnes, is a resident of Roane County, Tennessee, residing and owning real property located at 346 Penninsula Road, Harriman, TN 37748.

21.     Plaintiff Rick A. Barrett, is a resident of Roane County, Tennessee, residing and owning real property located at 2361 Sugar Grove Valley Road, Harriman, TN 37854.

22.     Plaintiff Brian T. Beaty, is a resident of Knox County, Tennessee, owning real property in Roane County, Tennessee, located at Parcel 03800 New Hope Road Extension, Rockwood, TN 37854.

23.     Plaintiff Tracy A. Beaty, is a resident of Knox County, Tennessee, owning real property in Roane County, Tennessee, located at Parcel 03800 New Hope Road Extension,

7

Rockwood, TN 37854.

24.     Plaintiff Elizabeth A. Bradford, is a resident of Roane County, Tennessee, residing and owning real property located at 304 Kelsay Drive, Kingston, TN 37763.

25.     Plaintiff Amy Brandon, is a resident of Roane County, Tennessee, residing at 73 Paint Rock Ferry Road, Kingston, TN 37763.

26.     Plaintiff Diane J. Breiner, is a resident of Knox County, Tennessee, owning real property on Roane County, Tennesee, located at 341 Chandler Lane, Harriman, TN 37748.

27.     Plaintiff Fred J. Breiner, is a resident of Knox County, Tennessee, owning real property in Roane County, Tennessee, located at 341 Chandler Lane, Harriman, TN 37748.

28.     Plaintiff Lance W. Brimble, is a resident of Knox County, Tennessee, owning real property in Roane County, Tennessee, located at 404 De Armond Road, Kingston, TN 37763.

29.     Plaintiff Jeffrey Bryant, is a resident of Roane County, Tennessee, residing and owning real property located at 343 Edgelake Drive, Kingston, TN 37763.

30.     Plaintiff Alexis Bryson, is a resident of Roane County, Tennessee, residing and owning real property located at 802 Emory Heights Road, Harriman, TN 37748.

31.     Plaintiff Cortney Bryson, is a resident of Roane County, Tennessee, residing and owning real property located at 802 Emory Heights Road, Harriman, TN 37748.

32.     Plaintiff James M. Burnette, is a resident of Roane County, Tennessee, residing and owning real property located at 374 Blue Springs Lane, Ten Mile, TN 37880.

33.     Plaintiff Sandra P. Burnette, is a resident of Roane County, Tennessee, residing and owning real property located at 374 Blue Springs Lane, Ten Mile, TN 37880.

34.     Plaintiff Audy L. Byrd, is a resident of Roane County, Tennessee, residing and

8

owning real property located at 332 Euclid Avenue, Kingston, TN 37763.

35. Plaintiff Debra L. Byrd, is a resident of Roane County, Tennessee, residing and owning real property located at 332 Euclid Avenue, Kingston, TN 37763.

36. Plaintiff Charles Cates, is a resident of Roane County, Tennessee, residing and owning real property located at 102 Tonya Lane, Harriman, TN 37748.

37. Plaintiff Joyce Cates, is a resident of Roane County, Tennessee, residing and owning real property located at 102 Tonya Lane, Harriman, TN 37748.

38. Plaintiff Buffy K. Clark, is a resident of Roane County, Tennessee, residing and owning real property located at 455 Wolf Creek Road, Kingston, TN 37763. S.B.O., a minor, resides with Ms. Clark.

39. Plaintiff Gisela Condon, is a resident of Roane County, Tennessee, residing and owning real property located at 830 Nelson Drive, Kingston, TN 37763.

40. Plaintiff James B. Condon, is a resident of Roane County, Tennessee, residing and owning real property located at 830 Nelson Drive, Kingston, TN 37763.

41. Plaintiff Jason Conway, is a resident of Roane County, Tennessee, residing and owning real property located at 216 High Point Village Way, Kingston, TN 37763.

42. Plaintiff Rebecca Conway, is a resident of Roane County, Tennessee, residing and owning real property located at 216 High Point Village Way, Kingston, TN 37763. A.C. and E.C., minors, reside with Ms. Conway.

43. Plaintiff Jacqui L. Doughty, is a resident of Roane County, Tennessee, residing and owning real property located at 307 Burkett Road, Rockwood, TN 37854.

44. Plaintiff Pat Doughty, is a resident of Roane County, Tennessee, residing and

9

owning real property located at 307 Burkett Road, Rockwood, TN 37854.

45.    Plaintiff Scott L. Doughty, is a resident of Roane County, Tennessee, residing and owning real property located at 307 Burkett Road, Rockwood, TN 37854. C.S.D., a minor, resides with Mr. Doughty.

46.    Plaintiff Lea Duncan, is a resident of Roane County, Tennessee, residing and owning real property located at 117 Walnut Road, Harriman, TN 37748.

47.    Plaintiff Luke Duncan, is a resident of Roane County, Tennessee, residing and owning real property located at 117 Walnut Road, Harriman, TN 37748.

48.    Plaintiff Ron Duncan, is a resident of Roane County, Tennessee, residing and owning real property located at 117 Walnut Street, Harriman, TN 37748.

49.    Plaintiff Samara Duncan, is a resident of Roane County, Tennessee, residing and owning real property located at 117 Walnut Road, Harriman, TN 37748.

50.    Plaintiff Doris S. Edwards, is a resident of Roane County, Tennessee, residing and owning real property located at 367 Emory River Road, Harriman, TN 37748.

51.    Plaintiff Nancy Engman, is a resident of Roane County, Tennessee, residing and owning real property located at 202 Foremast Road, Kingston, TN 37763.

52.    Plaintiff Paul Engman, is a resident of Roane County, Tennessee, residing and owning real property located at 202 Foremast Road, Kingston, TN 37763.

53.    Plaintiff Bob Gajewski, is a resident of Loudon County, Tennessee, owning real property in Roane County, Tennessee, located at Lots 33 and 34 Emory River Road, Harriman, TN 37748.

54.    Plaintiff Janet Gajewski, is a resident of Loudon County, Tennessee, owning real

10

property in Roane County, Tennessee, located at Lots 33 and 34 Emory River Road, Harriman, TN 37748.

55.	Plaintiff Elisa Gastineau, is a resident of Knox County, Tennessee, owning real property in Roane County, Tennessee, located at Sunrise Pointe, Lot #14, Rockwood, TN 37854.

56.	Plaintiff Michael Gastineau, is a resident of Knox County, Tennessee, owning real property in Roane County, Tennessee, located at Sunrise Pointe, Lot #14, Rockwood, TN 37854.

57.	Plaintiff David Grunwell, is a resident of Roane County, Tennessee, residing and owning real property located at 1024 Caney Creek Road, Harriman, TN 37748.

58.	Plaintiff Kathy Grunwell, is a resident of Roane County, Tennessee, residing and owning real property located at 1024 Caney Creek Road, Harriman, TN 37748.

59.	Plaintiff Fred Guinn, is a resident of Roane County, Tennessee, residing and owning real property located at 1028 Smith Mt Road, Rockwood, TN 37854 and 046-132 Bluff Road, Harriman, TN 37748. K.G. and K.G., minors, reside with Mr. Guinn during the summer months.

60.	Plaintiff Steven L. Hay, is a resident of Roane County, Tennessee, residing and owning real property located at 367 Emory River Road, Harriman, TN 37748.

61.	Plaintiff Susan R. Hay, is a resident of Roane County, Tennessee, residing and owning real property located at 367 Emory River Road, Harriman, TN 37748.

62.	Plaintiff Dollie Hendrickson, is a resident of Roane County, Tennessee, residing and owning real property located at 360 Skyline View Lane, Kingston, TN 37763.

63.	Plaintiff Tami Hines-Williams, is a resident of Roane County, Tennessee, residing at 305 Roane Street, Kingston, TN 37763. T.H., a minor, resides with Ms. Hines-Williams.

11

64.     Plaintiff Greg Hoskins, is a resident of Roane County, Tennessee, residing and owning real property located at 130 Holber Road, Harriman, TN 37748.

65.     Plaintiff Kelly Hoskins, is a resident of Roane County, Tennessee, residing and owning real property located at 130 Holber Road, Harriman, TN 37748.

66.     Plaintiff Susan Hutchinson, is a resident of Roane County, Tennessee, residing and owning real property located at 138 Orchard Road, Kingston, TN 37763.

67.     Plaintiff Twilight Loy, is a resident of Roane County, Tennessee, residing at 130 Love Drive, Harriman, TN 37748.

68.     Plaintiff Christopher Luffman, is a resident of Roane County, Tennessee, residing at 130 Love Drive, Harriman, TN 37748.  C.L. and Z.L., minors, reside with Mr. Luffman.

69.     Plaintiff Alice McDowell, is a resident of Roane County, Tennessee, residing and owning real property located at 1124 Brentwood Point, Kingston, TN 37763.

70.     Plaintiff Angela L. Melton, is a resident of Roane County, Tennessee, residing and owning real property located at 557 New Hope Road, Rockwood, TN 37845.

71.     Plaintiff Jackie B. Melton, is a resident of Roane County, Tennessee, residing and owning real property located at 557 New Hope Road, Rockwood, TN 37845.

72.     Plaintiff Marilyn Mitchell, is a resident of Roane County, Tennessee, residing at 813 Clifty Street, Harriman, TN 37748.

73.     Plaintiff Thomas Mitchell Jr., is a resident of Roane County, Tennessee, residing and owning real property located at 813 Clifty Street, Harriman, TN 37748.  B.M-B., a minor, resides with Mr. Mitchell during the summer months.

74.     Plaintiff Erik M. Perez, is a resident of Roane County, Tennessee, residing at

12

1025 Swan Pond Road, Harriman, TN 37748.

75.     Plaintiff Tony F. Perez , is a resident of Roane County, Tennessee, at 1025 Swan Pond Road, Harriman, TN 37748.

76.     Plaintiff Charles L. Phillips, is a resident of Roane County, Tennessee, residing and owning real property located at 383 Frost Hollow Road, Harriman, TN 37748.

77.     Plaintiff Pamela J. Phillips, is a resident of Roane County, Tennessee, residing and owning real property located at 383 Frost Hollow Road, Harriman, TN 37748.

78.     Plaintiff Bruce Renzo, is a resident of Roane County, Tennessee, residing and owning real property located at 802 Emory Heights Road, Harriman, TN 37748.

79.     Plaintiff Karen Renzo, is a resident of Roane County, Tennessee, residing and owning real property located at 802 Emory Heights Road, Harriman, TN 37748.

80.     Plaintiff Stephen K. Renzo, is a resident of Roane County, Tennessee, residing and owning real property located at 800 Emory Heights Road, Harriman, TN 37748. F.R. and H.R., minors, reside with Mr. Renzo.

81.     Plaintiff John V. Riccio, is a resident of Roane County, Tennessee, residing at 227 Eagle Point Road, Rockwood, TN 37854. Mr. Riccio also owns real property in Roane County, including the following: 100, 101, 113, 114, 116, 117, 118, 119, 120, 122, 123, 124, 126, 127, 128, 129 and additional property on Trieana Drive, Rockwood, TN 37854; 202, 205, 206, 208, 209, 211, 212, and 214 Manticore Drive, Rockwood, TN 37854; and property on Eagle Point Drive, Rockwood, TN 37854.

82.     Plaintiff Micah L. Rusinek, is a resident of Roane County, Tennessee, residing and owning real property located at 2941 Sugar Grove Valley Road, Harriman, TN 37748.

13

83. Plaintiff Stanley R. Rusinek, is a resident of Roane County, Tennessee, residing and owning real property located at 2941 Sugar Grove Valley Road, Harriman, TN 37748.

84. Plaintiff Mitchel Rutherford, is a resident of Roane County, Tennessee, residing and owning real property located at 343 Edgelake Drive, Kingston, TN 37763.

85. Plaintiff Judy K. Smith, is a resident of Roane County, Tennessee, residing and owning real property located at 165 McKinney Road, Harriman, TN 37748.

86. Plaintiff Paul Smith, is a resident of Roane County, Tennessee, resiing and owning real property located at 165 McKinney Road, Harriman, TN 37748.

87. Plaintiff Victoria Smith, is a resident of Roane County, Tennessee, residing and owning real property located at 383 Frosthollow Road, Harriman, TN 37748.

88. Plaintiff Denise J. Sorensen, is a resident of Loudon County, Tennessee, owning real property in Roane County, Tennessee, located at lot 30 Pin Oak Road, Rockwood, TN 37854.

89. Plaintiff Wayne P. Sorensen, is a resident of Loudon County, Tennessee, owning real property in Roane County, Tennessee, located at lot 30 Pin Oak Road, Rockwood, TN 37854.

90. Plaintiff Christine K. Sosnowicz, is a resident of Roane County, Tennessee, residing and owning real property located at 223 Lakecrest Drive, Harriman, TN 37748.

91. Plaintiff Harry Sosnowicz, is a resident of Roane County, Tennessee, residing and owning real property located at 223 Lakecrest Drive, Harriman, TN 37748.

92. Plaintiff Alfred D. Steimel, is a resident of Roane County, Tennessee, residing and owning real property located at 2059 Sugar Grove Valley Road, Harriman, TN 37748.

93. Plaintiff Sylvia A. Steimel, is a resident of Roane County, Tennessee, residing and owning real property located at 2059 Sugar Grove Valley Road, Harriman, TN 37748.

14

94. Plaintiff Deborah S. Stiles, is a resident of Roane County, Tennessee, residing and owning real property located at 114 Fred Davis Jr. Road, Harriman, TN 37748.

95. Plaintiff Elizabeth M. Stone, is a resident of Roane County, Tennessee, residing and owning real property located at 229 Lawnville Road, Kingston, TN 37763.

96. Plaintiff Eric M. Stone, is a resident of Roane County, Tennessee, residing and owning real property located at 299 Lawnville Road, Kingston, TN 37763. B.G.S., E.J.S. and M.C.S., minors, reside with Mr. Stone.

97. Plaintiff Peter M. Stresen-Reuter, is a resident of Roane County, Tennessee, residing and owning real property located at 501 Lakewood Road, Kingston, TN 37763.

98. Plaintiff Gary D. Thomas, is a resident of Roane County, Tennessee, residing and owning real property located at 2489 River Road, Kingston, TN 37763. Mr. Thomas also owns real property in Roane County located at 2449 River Road, Kingston, TN 37763 as well as parcels 2302, 2301, 2304, 2201, 2202 and 2403 River Road, Kingston, TN 37763.

99. Plaintiff Robert Trimmer, is a resident of Roane County, Tennessee, residing and owning real property located at 1124 Brentwood Point, Kingston, TN 37763.

100. Plaintiff Brian Walker, is a resident of Roane County, Tennessee, residing at 2388 Kingston Highway, Kingston, TN 37763.

101. Plaintiff James F. Webb, is a resident of Roane County, Tennessee, residing and owning real property located at 217 Montgomery View Drive, Harriman, TN 37748.

102. Plaintiff Terina Webb, is a resident of Roane County, Tennessee, residing and owning real property located at 217 Montgomery view Drive, Harriman, TN 37748.

103. Plaintiff Keith Wicks-Pelfrey, is a resident of Roane County, Tennessee, residing

15

and owning real property located at 114 Allison Drive, Harriman, TN 37748.

104. Plaintiff Pennie Wicks-Pelfrey, is a resident of Roane County, Tennessee, residing and owning real property located at 114 Allison Drive, Harriman, TN 37748.

105. Plaintiff De'Lano Williams, is a resident of Roane County, Tennessee, residing at 305 Roane Street, Kingston, TN 37763.

106. Plaintiff Deborah A. Zeckser, is a resident of Roane County, Tennessee, residing at 227 Eagle Point Road, Rockwood, TN 37854. Ms. Zeckser also owns real property in Roane County, including the following: 100, 101, 113, 114, 116, 117, 118, 119, 120, 122, 123, 124, 126, 127, 128, 129 and additional property on Trieana Drive, Rockwood, TN 37854; 202, 205, 206, 208, 209, 211, 212, and 214 Manticore Drive, Rockwood, TN 37854; and property on Eagle Point Drive, Rockwood, TN 37854.

107. Defendant TVA is a corporation chartered by the United States Congress pursuant to the Tennessee Valley Authority Act of 1933 ("TVA Act"), as amended, 16 U.S.C. §§ 831 et seq. Its corporate headquarters are located at 400 W. Summit Hill Drive, Knoxville, Tennessee, 37902-1499.

## FACTS

108. On Monday, December 22, 2008, an ash waste containment structure surrounding portions of a Class II landfill owned and operated by the Defendant TVA at its Kingston Fossil Plant near Kingston, Tennessee, failed releasing more than one billion gallons of sludge and water into the nearby environment.

109. The release of toxic ash sludge from the containment structures of the plant's Class II landfill created a tidal wave of water and toxic ash sludge which destroyed several homes,

16

covered local roads and a railroad spur, contaminated drinking water wells and municipal water intakes, damaged water lines, killed fish and other flora and fauna, and ruptured a major gas line in a neighborhood adjacent to the plant.

110. According to the TVA website, public access on Swan Pond Road past the Kingston plant remains closed except for residents and persons with official business. There is no estimate of when the road will reopen.

111. An aerial survey completed on December 24 shows that approximately 5.4 million cubic yards of ash sludge has been released on to land adjacent to the plant and into the nearby Clinch and Emory Rivers. The ash sludge covers more than 300 acres.

112. The ash sludge is contaminating, and will continue to contaminate in the future, the groundwater, surface water, air, soil, flora and fauna of the environment and Plaintiffs' properties.

113. Kingston is one of TVA's larger fossil plants. It generates 10 billion kilowatt-hours of electricity a year.

114. Ash waste is a by-product of coal-fired power plants and is stored in containment structures such as settling ponds, dredge cells, dikes, and other structures. The containment structure of the Class II landfill which failed covered about 90 acres. It was one of three containment structures at the Kingston Fossil Plant.

115. Federal studies demonstrate, and it has long been known, that coal ash contains significant quantities of heavy metals like arsenic, lead and selenium, which can cause cancer and neurological problems.

116. A 2007 draft report by the federal Environmental Protection Agency found that fly ash, a byproduct of the burning of coal to produce electricity, contains significant amounts of

17

carcinogens and retains the heavy metals present in coal in far higher concentrations. The report also found that the concentrations of arsenic to which people might be exposed through drinking water contaminated by fly ash could increase cancer risks several hundredfold.

117.    A 2006 study by the National Research Council found that these coal-burning by-products "often contain a mixture of metals and other constituents in sufficient quantities that they may pose public health and environmental concerns if improperly managed." The study further said that "risks to human health and ecosystems" might occur when these contaminants entered drinking water supplies or surface water bodies.

118.    Other studies show that mean concentrations of lead, chromium, nickel and arsenic are three to five times higher in the Appalachian coal that is mined near Kingston than in Rocky Mountain or Northern Plains coal.

119.    Independent testing of water samples collected downstream from the plant which were affected by the ash sludge which spilled from TVA's Kingston Fossil Plant show high levels of arsenic, barium, cadmium, chromium, copper, lead, mercury, nickel, selenium, thallium, and other pollutants, including radioactive substances, some of which exceed regulatory limits.

120.    Containment structures and retention dikes enclosing the Class II landfill are inspected by Defendant TVA. An inspection by the TVA in December, 2007 showed there were numerous problems with the containment structures enclosing the Class II landfill.

121.    The various containment structures and retention dikes enclosing the Class II landfill and other waste retention and control systems at the Kingston Fossil Plant have suffered numerous problems in the recent past, including leaks, seepages, and "baby blowouts."

122.    Defendant TVA's December 2007 inspection, and the "Annual Ash Pond Dike

18

Stability Inspection Report" dated February 15, 2008, reported that the ash retention ponds, dredge cells, containment structures, dikes, and other components of the ash and coal combustion products ("CCPs") waste processing, storage, and control system suffered from the following defects and failures:

    a.    floating ash creating a danger of offsite release;

    b.    seepage from dikes;

    c.    rutting of dike roads;

    d.    leaks in toes of the dikes;

    e.    overcapacity of dredge cells;

    f.    inability to absorb or drain rain or storm water;

    g.    bench rutting;

    h.    slope failures;

    i.    inadequate internal drainage;

    j.    infiltration of surface water on existing dike benches;

    k.    anomalies in subsurface conditions;

    l.    standing water;

    m.    lack of vegetation;

    n.    previous blow outs;

    o.    water levels in dredge cells which were too high;

    p.    poor bench drainage;

    q.    improper bench grading;

    r.    insufficient and inadequate drainage repairs;

s.      staining due to leaching out of substances from the bottom ash in the dredge cells;

t.      insufficient removal of plants and trees which had damaged dredge cell slopes;

u.      insufficient clean out of basins, drainage ditches, and discharge ditches and sluices;

v.      breaching of check dams;

w.      erosion of dikes;

x.      unstable rip-rap;

y.      impeded flow of dredge cell drainage ditches;

z.      insufficient number of spring boxes to control or relieve water pressure;

aa.      inadequate monitoring of drain areas and exterior dike slopes for seepages, soft wet spots, animal burrowing, and sloughing;

bb.      inadequate dredging of drainage basins to restore design contours and protect pumps from further damage;

cc.      excessive vegetation growing inside spillway structures.

123.    The containment structures enclosing and surrounding the Class II landfill were not properly designed, constructed, or maintained to withstand freezing temperatures or heavy rainfall and as a result suffered significant instability and failure.

124.    Noticeable seepage and leaking of containment ponds at the Kingston Fossil Plant was discovered in 2003 and 2005 but had not been adequately repaired by Defendant TVA.

125.    The ash sludge is stored in a wet, rather than a dry, form in unlined containment structures, thereby contributing to its propensity to escape confinement and to contaminate the environment.

20

126. The foregoing defects, failures, and conditions, among others, contributed to, aggravated, worsened, or caused the ash spill.

127. Defendant TVA knew or should have known that there was a history of problems, warning signs, previous blow outs, leakages, erosions, instability, seepage, and overcapacity, among numerous other problems, with its ash waste handling and storage system, including the containment structures enclosing and surrounding the Class II landfill.

128. Despite the foregoing knowledge, Defendant TVA chose to ignore these problems, failed to remedy these problems, failed to warn regulators, the public, or the Plaintiffs, and intentionally concealed or misrepresented the existence and nature of the dangerous problems with its ash waste handling and storage system, including the containment structures enclosing and surrounding the Class II landfill.

129. Plaintiffs property was inundated and damaged by toxic ash sludge from the spill which remains on their property or was impacted and damaged by its proximity to the spill.

130. Plaintiffs' real property and residences were severely damaged by the ash sludge and have been rendered uninhabitable and/or inaccessible and permanently contaminated, or have been impacted and damaged by their proximity to the spill.

131. Plaintiffs' health and well-being has been severely damaged and threatened by the ash spill.

## CAUSES OF ACTION

132. Plaintiffs herein state the following for their causes of action against the TVA.

## COUNT I – PUBLIC NUISANCE

133. Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding

21

paragraphs as if fully restated herein.

134. The massive and catastrophic spill of ash sludge from Defendant TVA's landfill, retention ponds, and dredge cells at Kingston Fossil Plant has created a public nuisance which disturbs the free use of Plaintiff's property and renders its ordinary use or physical occupation uncomfortable.

135. The ash spill has created a public nuisance which significantly and unreasonably endangers life and health, offends the senses, violates the laws of decency, and obstructs the reasonable and comfortable use of property.

136. The ash spill has invaded and contaminated the locality and has permanently spoiled the character of the surroundings. The ash spill is not part of the nature, utility or social use of the Kingston Fossil Plant, and the nature and extent of the harm it has caused is long-lasting, widespread, and dangerous to life and health as well as to the surrounding environment and ecosystem, including the groundwater, surface water, soil, air, flora, and fauna. Further, the ash spill has caused Plaintiffs to be driven from their home, has created concern that they should leave their home, and has damaged their properties.

137. The ash sludge is a public nuisance which presents a significant and unreasonable health hazard because it contains known toxic substances including human carcinogens, neurotoxins, teratogens, and mutagens, among other known human health hazards.

138. The ash spill is an unreasonable invasion of Plaintiffs' use and enjoyment of their property and is a permanent nuisance which cannot be corrected by the expenditure of labor or money.

139. The ash spill is a public nuisance which is an unreasonable interference with rights

22

common to the general public and involves a significant interference with public health, safety, peace, comfort, and convenience.

140. The ash spill is continuing in nature and has produced a permanent or long-lasting effect which Defendant TVA knew or had reason to know would have a significant effect upon the public right.

141. Plaintiffs, as owners of residential and/or business properties which were physically damaged by the ash spill, or which were in proximity to the spill, suffered special damages, harms, and injuries which are different in kind from the public at large.

142. The ash spill has blocked roads thereby preventing Plaintiffs access to and egress from their properties.

143. All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

## COUNT II – STATUTORY PUBLIC NUISANCE

144. Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

145. The ash spill from Defendant TVA's Kingston Fossil Plant is a violation of Tennessee environmental laws and regulations which deem violations of such statutes to be statutory public nuisances.

146. Defendant TVA's ash spill violated provisions of the following Tennessee statutes and such violations of the statutes and applicable regulations are deemed and declared by the state legislature in these statutes to be public nuisances:

   a.    The Tennessee Safe Drinking Water Act ("TSDWA"), Tenn. Code Ann. 68-221-701

*et seq.*, and specifically of Tenn. Code Ann. 68-221-711(4) and (5). Pursuant to Tenn. Code Ann. 68-221-716, violations of the TSDWA are "declared to be public nuisances."

b. The Tennessee Water Quality Control Act (TWQCA"), Tenn. Code Ann. §§ 69-3-101 *et seq.* and specifically Tenn. Code Ann. § 69-3-108(b), § 69-3-114(a) and (b), and others. Pursuant to Tenn. Code Ann. § 69-3-114(b), violations of the TWQCA "are declared to be a public nuisance."

c. The Tennessee Solid Waste Disposal Act ("TSWDA"), Tenn. Code Ann. §§ 68-211-101 *et seq.* and specifically Tenn. Code Ann. § 68-211-104, including § 68-211-104(1) and (4), among others. Pursuant to Tenn. Code Ann. § 68-211-104(1) and (4) violations of the TSWDA which "create a public nuisance" are deemed unlawful.

d. The Tennessee Hazardous Waste Management Act ("THWMA"), Tenn. Code Ann. § 68-212-101 *et seq.* and specifically Tenn. Code Ann.§§ 68-212-105(1) and (4), among others. Pursuant to Tenn. Code Ann. § 68-212-105(1) and (4) violations of the THWMA which "create a public nuisance" are deemed unlawful.

147. Defendant TVA's ash spill and violations of the foregoing statutory provisions and regulations therefore constitute a statutory public nuisance.

148. Defendant TVA's ash spill and violations of the foregoing statutory provisions and regulations also constitute evidence of public and private nuisance.

149. All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

24

## COUNT III – PRIVATE NUISANCE

150.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

151.    The ash spill from Defendant TVA's Kingston Fossil Plant is a private nuisance which constitutes an invasion of Plaintiffs' interest in the private use and enjoyment of their land.

152.    The ash spill is a private nuisance which has resulted in a substantial, unreasonable, and tortious interference with the use and enjoyment of Plaintiffs' properties.

153.    The ash spill has invaded and contaminated a large swath of the land and river nearby and adjacent to Plaintiffs' properties and residences. It has also physically invaded, contaminated, and caused physical damage to Plaintiffs' properties and residences. The ash spill poses a substantial and unreasonably danger to the public health and to Plaintiffs' health, and to the surrounding environment and ecosystem, including the groundwater, surface water, soil, air, flora, and fauna.

154.    Defendant TVA's conduct is a legal cause of the invasion of the Plaintiffs' interest in the private use and enjoyment of their land.

155.    The substantial and unreasonable invasion of and interference with Plaintiffs' use and enjoyment of their properties was directly and proximately caused by Defendant TVA's negligence and recklessness, and by the abnormally dangerous conditions and activities resulting from Defendant TVA's conduct.

156.    All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

## COUNT IV – TRESPASS

157.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

158.    The ash spill from Defendant TVA's Kingston Fossil Plant physically invaded and contaminated Plaintiffs' properties, residences, and *res*, including its groundwater, surface water, soil, air, flora, and fauna, and has substantially and unreasonably interfered with Plaintiffs' exclusive possession of their properties and residences.

159.    The physical contamination of Plaintiffs' properties by the ash spill, which contains high levels of toxic substances including arsenic, lead, chromium, thallium, radioactive substances, and other hazardous pollutants and invading substances, poses a substantial danger to the health of the Plaintiffs and constitutes a substantial and unreasonable interference with Plaintiffs' exclusive possession of their properties and residences.

160.    Defendant TVA permitted the ash waste and sludge which was under their control to enter Plaintiffs' properties without authority, privilege, or permission thereby causing substantial damage.

161.    All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

## COUNT V – NEGLIGENCE

162.    Plaintiffs reallege and affirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

163.    As the owner and operator of the Kingston Fossil Plant, Defendant TVA owed a duty to Plaintiffs, as well as to all persons who might foreseeably be harmed, to exercise due care in

26

the operation, maintenance, handling, design, testing, and inspection of the plant, including the landfill and all related containment structures, including but not limited to the ash (fly and bottom) retention ponds, dredge cells, stilling ponds, chemical treatment ponds, coal yard drainage basins, dikes, pools, sluice and intake channels, drains, catch basins, engineered wetlands, and all its associated ash, coal combustion products ("CCPs"), and other coal waste treatment and handling facilities, systems, and methods, and to prevent the massive spill of ash waste which occurred on December 22, 2008, which invaded and contaminated the Plaintiffs' properties and the local environment and ecosystems and which pose a danger to their health and safety.

164. At all times relevant to this litigation, Defendant TVA knew or should have known that:

a. ash and other CCP wastes are hazardous to human health and to the environment and ecosystems;

b. ash and other CCP wastes must be stored and disposed of in a safe manner and prevented from escaping offsite onto private and public lands and into the environment and ecosystems;

c. ash and other CCP wastes contain substances which are hazardous to human health and to the environment and ecosystems;

d. the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds, pools, dredge cells, dikes, and berms must be adequately and timely inspected, maintained, and repaired in order to prevent the escape of ash and other CCP wastes offsite onto private and public lands and into the environment and ecosystems;

e. the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds and dredge cells and associated dikes and berms must be adequately designed, constructed, and maintained in order to prevent the escape of ash and other CCP wastes offsite onto private and public lands and into the environment and ecosystems;

f. remediation and abatement must be adequately and timely conducted if ash and any other CCP wastes, and the hazardous substances which they contain, escape from the retention ponds and dredge cells and contaminate the Plaintiffs' properties and local environment and ecosystems; and

g. Plaintiffs, public officials, and government agencies should be adequately and timely warned of the harmful effects of ash and any other CCP wastes, and the hazardous substances which they contain, which escape from the retention ponds

27

and dredge cells and contaminate the Plaintiffs' properties and the local environment and ecosystems.

165. Defendant TVA's conduct fell below the duty of care owed to the Plaintiffs

amounting to a breach of that duty. Defendant TVA owed the Plaintiffs the following duties:

a. a duty to store, process, and dispose of waste products, including ash and other CCP wastes and hazardous substances, in a safe manner;

b. a duty not to create conditions at the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds and dredge cells, that would injure Plaintiffs;

c. a duty to adequately and timely inspect, maintain, and repair the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds and dredge cells and associated dikes and berms;

d. a duty to adequately design and construct the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds and dredge cells and associated dikes and berms;

e. a duty to prevent ash and any other CCP wastes, and the hazardous substances which they contain, from escaping from the Defendant TVA's property, its Kingston Fossil Plant, and its retention ponds and dredge cells and contaminating the Plaintiffs' properties and the local environment and ecosystems;

f. a duty to remediate and abate ash and any other CCP wastes, and the hazardous substances which they contain, which escape from the retention ponds and dredge cells and contaminate the Plaintiffs' properties and the local environment and ecosystems; and

g. a duty to warn the Plaintiffs, public officials, and government agencies of the harmful effects of ash and any other CCP wastes, and the hazardous substances which they contain, which escape from the retention ponds and dredge cells and contaminate the Plaintiffs' properties and the local environment and ecosystems.

166. Plaintiffs suffered injury and loss as a result of Defendant TVA's breach of their

aforementioned duties. Specifically, Defendant TVA breached their duties owed to the Plaintiffs

by:

a. failing to properly, adequately, and timely store, process, and dispose of waste products, including ash and other CCP wastes and hazardous substances, in a safe manner;

b. creating conditions, or preventing the creation of conditions, at the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds and dredge cells, that would injure Plaintiffs;

c. failing to properly, adequately, and timely inspect, maintain, and repair the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its

28

ash retention ponds and dredge cells and associated dikes and berms;

d. failing to properly, adequately, and timely design and construct the Kingston Fossil Plant and its associated ash and CCP waste handling facilities, including its ash retention ponds and dredge cells and associated dikes and berms;

e. failing to prevent ash and any other CCP wastes, and the hazardous substances which they contain, from escaping from the Defendant TVA's property, its Kingston Fossil Plant, and its retention ponds and dredge cells and contaminating the Plaintiffs' properties and the local environment and ecosystems;

f. failing to remediate and abate the ash and any other CCP wastes, and the hazardous substances which they contain, which escaped from the retention ponds and dredge cells and contaminated the Plaintiffs' properties and the local environment and ecosystems; and

g. failing to warn the Plaintiffs, public officials, and government agencies of the harmful effects of ash and other CCP wastes, and the hazardous substances which they contain, which escaped from the retention ponds and dredge cells and contaminated the Plaintiffs' properties and the local environment and ecosystems.

167. All of Plaintiffs' damages were caused in fact by Defendant TVA's breach of their duties.

168. Defendant TVA's breach of their duties posed an unreasonable risk of harm to the Plaintiffs.

169. Defendant TVA is liable in ordinary negligence to the Plaintiffs.

170. The danger and risk of harm to the Plaintiffs was reasonably foreseeable.

171. Defendant TVA's breach of its duties was the direct and proximate cause of all of Plaintiffs' damages and Defendant TVA is liable therefor.

## COUNT VI – GROSS NEGLIGENCE

172. Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

173. Defendant TVA is liable to Plaintiffs in gross negligence because Defendant TVA acted with utter unconcern for the safety of others and with such a reckless disregard for the rights of others that a conscious indifference to the consequences is implied in law.

29

174.    Defendant TVA is liable to Plaintiffs in gross negligence because Defendant TVA

acted with recklessness and a conscious neglect of their duties.

175.    Defendant TVA is liable in gross negligence because they were reckless regarding,

were indifferent to, or knew or should have known that:

a.    the retention ponds and dredge cells, and particularly the dikes, berms, and earthen
      walls thereof, were not capable of preventing the massive failure and leakage which
      resulted in the release and spillage of massive amounts of ash waste and sludge into
      the environment and onto Plaintiffs' property;

b.    the retention ponds and dredge cells, and particularly the dikes, berms, and earthen
      walls thereof, had not been adequately or timely inspected, maintained, or repaired
      in order to prevent the ash spill;

c.    the retention ponds and dredge cells, and particularly the dikes, berms, and earthen
      walls thereof, had not been adequately designed or constructed in order to prevent
      the ash spill;

d.    the ash and CCP waste control system had not been adequately designed or
      constructed, and did not have adequate backup safety systems, in order to control the
      ash spill onsite and prevent it from escaping offsite;

e.    the ash and CCP wastes contained numerous toxic and hazardous substances,
      including arsenic, barium, cadmium, chromium, lead, mercury, thallium,
      radionuclides, and other hazardous substances which are dangerous and pose an
      unreasonable risk to human health and to the environment if they escape or spill
      offsite;

f.    Defendant TVA was aware of previous seepages and leaks from the containment
      structures and knew or should have known that they had not been adequately
      repaired or maintained.

176.    As a result of the foregoing acts or omissions of Defendant TVA a conscious

indifference to the consequences can be implied in law.

177.    All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's

acts and/or omissions and Defendant TVA is liable therefor.

## COUNT VII – NEGLIGENCE PER SE

178.    Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding

paragraphs as if fully restated herein.

30

179.    Defendant TVA is subject to and regulated under a number of federal and state statutes, regulations, ordinances, rules, standards, and permits which create statutory standards, duties, and obligations which are intended to protect and benefit persons such as the Plaintiffs herein. Plaintiffs are within the class of persons these statutes, regulations, ordinances, rules, standards, and permits were intended to protect.

180.    Defendant TVA's acts and omissions resulting in the massive ash spill violated these federal and state statutes, regulations, ordinances, rules, standards, and permits.

181.    Defendant TVA's violations of these federal and state statutes, regulations, ordinances, rules, standards, and permits constitute negligence *per se* for which Defendant TVA is liable to Plaintiffs under Tennessee law.

182.    Defendant TVA's acts and omissions and violations of these federal and state statutes, regulations, ordinances, rules, standards, and permits were the proximate cause of all of the Plaintiffs' injuries and damages.

183.    **Clean Water Act**:  Congress has waived sovereign immunity for Defendant TVA which is regulated under the Federal Water Pollution Control Act (FWPCA, "Clean Water Act," or "CWA"), 33 U.S.C. §§ 1251 *et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate FWPCA § 301(a), 33 U.S.C. §§ 1311(a), FWPCA § 402, 33 U.S.C. §§ 1342, and FWPCA § 404,  33 U.S.C. §§ 1344, among others.

184.    **Resource Conservation and  Recovery Act**:  Congress has waived sovereign immunity for Defendant TVA which is regulated under the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 *et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate RCRA § 4005, 42 U.S.C. § 6945, and § 7002(a)(1)(B), 42 U.S.C.

31

§ 6972(a)(1)(B), among others.

185. **Tennessee Water Quality Control Act**: Defendant TVA is regulated, and sovereign immunity has been waived, under the Tennessee Water Quality Control Act (TWQCA"), Tenn. Code Ann. §§ 69-3-101 *et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate Tenn. Code Ann. § 69-3-108(b) and § 69-3-114(a) and (b), among others.

186. On January 12, 2009, the Tennessee Department of Environment and Conservation issued an Emergency Order under Tenn. Code Ann. §§ 69-3-109(b)(1), finding that due to the ash spill from Defendant TVA's Kingston Fossil Plant "an emergency exists imperatively requiring immediate action to protect the public health, safety, or welfare, or the health of animals, fish, or aquatic life, or a public water supply, or recreational, commercial, industrial, agricultural, or other reasonable uses."

187. Defendant TVA is and continues to be in violation of its National Pollutant Discharge Elimination System Permit ("NPDES") #TN0005452 issued by the Tennessee Department of Environment and Conservation, Water Pollution Control Division.

188. **Tennessee Solid Waste Disposal Act**: Defendant TVA is regulated, and sovereign immunity has been waived, under the Tennessee Solid Waste Disposal Act ("TSWDA"), Tenn. Code Ann. §§ 68-211-101 *et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate Tenn. Code Ann. § 68-211-104, including § 68-211-104(1) and (4), among others.

189. Defendant TVA has violated its Class II landfill permit issued under the Tennessee Solid Waste Disposal Act ("TSWDA"), Tenn. Code Ann. §§ 68-211-101 *et seq*., by the Tennessee Department of Environment and Conservation, Solid Waste Management Division.

32

190. **Tennessee Safe Drinking Water Act**: Defendant TVA is regulated, and sovereign immunity has been waived, under the Tennessee Safe Drinking Water Act ("TSDWA"), Tenn. Code Ann. § 68-221-711*et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate Tenn. Code Ann. §§ 68-221-711(4) and (5), among others.

191. **Tennessee Hazardous Waste Management Act**: Defendant TVA is regulated, and sovereign immunity has been waived, under the Tennessee Hazardous Waste Management Act ("THWMA"), Tenn. Code Ann. § 68-212-101 *et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate Tenn. Code Ann.§§ 68-212-105(1) and (4), among others.

192. **Tennessee Air Quality Act**: Defendant TVA is regulated, and sovereign immunity has been waived, under the Tennessee Air Quality Act ("TAQA"), Tenn. Code Ann. § 68-201-101 *et seq*. Defendant TVA's catastrophic ash spill has violated and continues to violate Tenn. Code Ann. § 68-201-101 *et seq*.

193. Defendant TVA's violations of these foregoing federal and state statutes, regulations, ordinances, rules, standards, and permits constitute negligence *per se* and Defendant TVA is liable therefor.

194. All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and violations of the foregoing federal and state statutes, regulations, ordinances, rules, standards, and permits and Defendant TVA is liable therefor.

### COUNT VIII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

195. Plaintiffs reallege and reaffirm each and every allegation set forth in all preceding paragraphs as if fully restated herein.

196. Defendant TVA was negligent in causing and failing to prevent the catastrophic ash

33

spill which has threatened or invaded and contaminated Plaintiffs' property and endangered their health.

197. The Plaintiffs have seen, heard, and otherwise directly experienced the ash spill which has threatened or invaded and damaged their property and endangered their health.

198. The negligence of Defendant TVA in causing and failing to prevent the ash spill has caused serious emotional injury, distress, fright, shock, revulsion, natural concern, fear, and anxiety to the Plaintiffs.

199. Plaintiffs have a reasonable basis to believe that the impacts upon and injuries to their property are severe and permanent and that their exposure to the toxic substances contained in the ash sludge has endangered and will continue to endanger their health and safety.

200. Plaintiffs have been significantly exposed to toxic metals, radionuclides, and other hazardous substances contained in the ash sludge which spilled from Defendant TVA's Kingston Fossil Plant.

201. These toxic materials have entered and will enter Plaintiffs' bodies via a number of pathways, including inhalation, ingestion, and absorption.

202. Plaintiffs' exposure to these hazardous substances has created a likelihood that they will develop a disease or illness in the future.

203. All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

**COUNT IX – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

204. Plaintiffs reallege and reaffirm each and every allegation set forth in all proceeding paragraphs as if fully restated herein.

34

205. Defendant TVA's acts and omissions in permitting and failing to prevent the massive ash spill which has threatened or invaded the environment and Plaintiffs' property and contaminated it with highly toxic substances thereby endangering the health of the Plaintiffs and rendering their property permanently uninhabitable and unsaleable constituted intentional or reckless conduct which is so outrageous that it is not tolerated in civilized society.

206. Defendant TVA's outrageous conduct in permitting and failing to prevent the massive ash spill which contained such vast quantities of hazardous materials and which threatened, invaded, contaminated, and permanently damaged such a large swath of land, including rivers, road, residences, groundwater, surface water, air, soil, flora and fauna, and including Plaintiffs' property, caused and inflicted severe emotional distress upon the Plaintiffs.

207. Defendant TVA disregarded the substantial probability of causing the Plaintiffs severe mental distress.

208. Defendant TVA knew or should have known that the ash sludge contained highly toxic substances which are hazardous to human health and that such a massive ash spill could cause Plaintiffs severe emotional distress.

209. All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

**COUNT X – STRICT LIABILITY FOR ULTRA-HAZARDOUS ACTIVITY**

210. Plaintiffs reallege and reaffirm each and every allegation set forth in all proceeding paragraphs as if fully restated herein.

211. Defendant TVA was, during all relevant times, engaged in an ultra-hazardous activity and therefore is strictly liable for all damages and injuries caused by such activity to the

35

Plaintiffs.

212. Specifically, Defendant TVA's production, processing, handling, retention, and storage of such massive quantities of ash and other CCP wastes at the Kingston Fossil Plant containing high levels of extremely toxic substances which are hazardous to human health and the environment, and which can cause permanent and irremediable damage to Plaintiffs' health and property, and to the environment and the public at large, constitutes an abnormally dangerous or ultra-hazardous activity.

213. Defendant TVA knew of should have known of the dangerous propensity and ultra-hazardous nature of the activity.

214. Defendant TVA's production, processing, handling, retention, and storage of such massive quantities of ash and other CCP wastes containing high levels of extremely toxic substances created a high degree of risk of some harm to persons and the lands and chattels of others.

215. Defendant TVA's storage of ash waste created a likelihood that the harms resulting from such abnormally dangerous activities would be great.

216. Defendant TVA was unable to eliminate the risk by the exercise of due care.

217. Defendant TVA's activity was not a matter of common usage.

218. Defendant TVA's activity was inappropriate to the place where it was carried on.

219. The value of Defendant TVA's activity of storing massive quantities of toxic sludge onsite does not outweigh the dangerous attributes of the activity.

220. Defendant TVA's activity caused severe and permanent damages and injuries to Plaintiffs, including property damage, emotional distress, potential future harm to Plaintiffs

36

including increased risk of future disease, fear of cancer, and other damages.

221.    All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

### COUNT XI – INCREASED RISK OF FUTURE HARM

222.    Plaintiffs reallege and reaffirm each and every allegation set forth in all proceeding paragraphs as if fully restated herein.

223.    Plaintiffs suffer from a substantially increased risk of future harm because they have been significantly exposed to toxic metals, radionuclides, and other hazardous substances contained in the ash sludge which spilled from Defendant TVA's Kingston Fossil Plant.

224.    These toxic materials have entered and will enter Plaintiffs' bodies via a number of pathways, including inhalation, ingestion, and absorption.

225.    The toxic materials and pollutants to which Plaintiffs have been exposed are capable of causing cancers, liver and kidney damage, neurological injuries, reproductive system injuries, birth defects, and numerous other serious harmful health effects upon the Plaintiffs.

226.    All of Plaintiffs' damages are the direct and proximate result of Defendant TVA's acts and/or omissions and Defendant TVA is liable therefor.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for a judgment against Defendant TVA for:

227.    Compensatory damages, in an amount to be determined at trial, for:

   a.    the diminution in market value of Plaintiffs' properties;

   b.    the loss of use and enjoyment of Plaintiffs' properties;

   c.    increased risk of future disease or illness;

37

       d.     emotional distress and mental anguish; and

       e.     fear of cancer.

228.    Such further relief, including injunctive and equitable relief, as the Court deems appropriate including:

       a.     investigation;

       b.     testing and monitoring;

       c.     preventing Defendant TVA from engaging in further releases of ash sludge or waste;

       d.     compelling Defendant TVA to abate the continuing nuisance by removing the contaminants from the soil and groundwater; and

       e.     all further measures necessary to remedy the ash sludge contamination and to protect the groundwater and public health and safety from further contamination from the ash sludge or waste.

229.    Court-supervised fund for medical testing and medical monitoring;

230.    Pre-judgment and post-judgment interest on the damages according to law;

231.    Costs and disbursements of this lawsuit;

232.    Attorney Fees;

233.    Any other and further relief as the Court deems just, proper and equitable.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims asserted in this Complaint.

Dated: February 18, 2009

RESPECTFULLY SUBMITTED,


_____
Roger T. May
May & Ryan, PLC
219 Second Ave N, Suite 300
Nashville, TN 37201 US


_____
Robin L. Greenwald
Weitz & Luxenberg, P.C.
180 Maiden Lane, 17th Floor
New York, NY 10038
(212) 558-5500

John M. Broaddus
Weitz & Luxenberg, P.C.
210 Lake Drive East, Suite 101
Cherry Hill, NJ 08002
(856) 755-1115

Attorneys for Plaintiffs

39